# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

JAMES G. BURGESS                                                       PLAINTIFF

CASE NO. 4:05-CV-1760 GTE

TRUSTMARK INSURANCE COMPANY                         DEFENDANTS

## ORDER

Presently before the Court is Defendant's Motion to Amend its February 13, 2007, Order regarding the twelve percent statutory penalty awarded to Plaintiff.

**I. Background**

In 1991, Plaintiff, Dr. James Burgess, purchased a disability insurance policy from Continental. At some point Continental assigned the obligations under the Policy to Trustmark, who began collecting the premiums from Dr. Burgess. The Policy, designated TV2308, provided for the payment of $14,000 per month after the 90 day elimination period in disability benefits for Dr. Burgess' lifetime if the disability commences before age 65 "resulting from injury," "to age 65 for disability commencing after age 60 resulting from sickness." Injury is defined as "accidental bodily injury that occurs while Your policy is in force and results directly and independently of all other causes in loss covered by the policy." Sickness is defined as "sickness or disease which is diagnosed or treated while Your policy is in force."

On July 31, 2004, Dr. Burgess was in an accident involving a tractor. On March 18, 2005, Trustmark sent a letter to Dr. Burgess stating in part:

1

We would like to take this opportunity to outline the status of your claim under policy number TV2308.[1]

As previously outlined to you, the policy defines *Injury* as follows:
> "*Injury means accidental bodily injury that occurs while Your policy is in force and results directly and independently of all other causes in loss covered by the policy.*"

We recently had your file reviewed by our Medical Consultant, a board-certified Neurologist. The Medical Consultant opined that your medical condition is mainly due to facet disease causing spinal stenosis. In addition, Dr. Williams' September 28, 2004 office note states that you complained of six months of back pain.[2] Furthermore, it appears that your alleged injury may have exacerbated the symptomatic facet disease, however, your medical condition does not appear to be solely due to an *Injury* "*directly and independently of all other causes.*" Therefore, your claim will be considered under the *Sickness* provision of the policy. Benefits are payable to the first anniversary date of your policy following your 65th birthday (February 16, 2008) for conditions due to the result of a *Sickness*.

On April 20, 2005, Mr. Coulter sent a letter to Trustmark stating, "we anticipate filing suit alleging that Dr. Burgess is entitled to full disability benefits for the rest of his life because he was disabled on an accident on his farm." Additionally, the letter stated that Dr. Burgess was going to negotiate the check sent to him without waiving his claim under the policy for the full payment under the "injury" provision of the policy. The letter also stated that the "check you have tendered is for payments that Trustmark owes regardless of whether the 'sickness' or 'injury' provisions govern the carrier's duties. . . . If you take a different position with regard to this, then you should

---

[1]Each Trustmark letter provided to the Court contains this same introductory sentence.

[2]The September 28, 2004 letter from Dr. Williams regarding Dr. Burgess states in part, "For six months or so now he has had difficulty with back pain. It is mainly nonradicular, but occasionally will go down the back of the legs to the knee, but no further. It is aggravated predominantly by walking, sitting and bending. He has had no specific treatment for that. He brings along a MRI of the lumbar spine that shows degenerative disc disease and moderate stenosis at L3-4."

notify us immediately." On April 28, 2005, Trustmark sent a letter to counsel for Dr. Burgess, including enclosed copies of letters dated December 9, 2005, and March 18, 2005, stating in part,

> Our decision was based upon the information we had available to us at the time of the decision. We would be happy to review any other information you wish to submit in regards to Dr. Burgess' claim. Again, please be aware that according to the terms of the policy, Injury is defined as: [restating definition].

The letter agreed with the assessment that the money previously sent to Dr. Burgess is payable regardless of the classification of "sickness" or "injury."

On October 21, 2005, Trustmark sent a letter to counsel for Dr. Burgess stating in part,

> In the interim, we have continued to provide your client with monthly Total Disability benefits. Please understand that we have issued these payments, on an exceptional basis, in an effort to be of service to your client, without waiving any of our right or defenses afforded by the contract or under law. Our payment of these benefits should not be construed as acceptance of liability for the period in which we are providing benefits.

On November 17, 2005, Plaintiff filed the present breach of contract suit. Pursuant to the Court's final scheduling order dated April 6, 2006, the case was set for jury trial beginning on September 25, 2006. On July 10, 2006, the Court referred the case to Magistrate Forester for a settlement conference, which was scheduled for August 22, 2006.

In his affidavit, Mr. Coulter states that the morning of the settlement conference, Trustmark's counsel "showed up with his client's doctor's report, conceding that Dr. Burgess was disabled from a broken back suffered in July 2004." On September 19, 2006, the Court entered a Consent Judgment stating, "Defendant Trustmark Insurance Company has agreed that Plaintiff James Burgess is disabled as a result of the accidental bodily injury he suffered on July 31, 2004. For so long as Dr. Burgess cannot perform the substantial and material duties of his regular

occupation, and for so long as he submits semi-annually to Trustmark a continuous claim form verifying his disability, Trustmark shall pay Dr. Burgess $14,000 a month for the rest of his life."

**II. Motion to Amend Order**

Plaintiff requested, and the Court awarded, the statutory 12% penalty pursuant to Arkansas Code Annotated § 23-79-208. Section 23-79-208 provides in pertinent part:

> (a)(1) *In all cases in which loss occurs and the* cargo, property, marine, casualty, fidelity, surety, cyclone, tornado, *life,* accident and health, medical, hospital, or surgical benefit *insurance company* and fraternal benefit society or farmers' mutual aid association or company liable therefor *shall fail to pay the losses within the time specified in the policy after demand is made, the person, firm, corporation, or association shall be liable to pay the holder of the policy or his or her assigns, in addition to the amount of the loss, twelve percent (12%) damages upon the amount of the loss, together with all reasonable attorney's fees for the prosecution and collection of the loss.* [Emphasis added.]

In an opinion by Judge Howard in this district, the court stated, "The penalty nature of section 23-79-208 'is directed against unwarranted delaying tactics of insurers.'" *McKee v. Federal Kemper Life Assur. Co.*, 726 F. Supp. 245, 247 (E.D. Ark. 1989), *aff'd* 927 F.2d 326, 328-329 (8th Cir. 1991) (quoting *Simmons First National Bank v. Liberty Mutual Insurance Co.*, 282 Ark. 194, 198, 667 S.W.2d 648 (1984)). "The legislature has recognized a social and moral purpose in providing for the allowance of a statutory penalty and attorney's fees in litigation between insured and insurer. These reasons include discouraging oppressive delay in recognition of liability, deterring arbitrary or capricious denial of claims, and insuring the ability of claimants to obtain legal representation." *Id*. (citing *USAA Life Insurance Co. v. Boyce,* 294 Ark. 575, 578, 745 S.W.2d 136 (1988)). "The Arkansas courts have recognized that because the statute is highly penal in nature it is to be strictly construed." *Id*. (citing *Callum v. Farmers Union Mutual Ins.,* 256 Ark. 376, 381, 508 S.W.2d 316 (1974).

4

Defendant argues that the twelve percent statutory penalty is not available in this action because it is a declaratory judgment action. In support of this argument, Defendant cites *Transcontinental Ins. Co. v. Rainwater Constr. Co.*, ___ F. Supp. 2d, 2007 WL 473694 (E.D. Ark. Feb 8, 2007) (refusing to impose penalty in insurer's declaratory judgment action after finding that insurer had duty to defend or indemnify insured in state court action). There, Judge Howard stated, "The Court is not convinced that the 12% penalty applies to claims under Section 23-79-209, and the Arkansas Supreme Court has so held. *Shelter Mut. Ins. Co. v. Smith,* 300 Ark. 348, 353 (1989). Certainly, had the Arkansas legislature wanted to include such a penalty it would have done so. In not doing so, the Arkansas legislature distinguished between first party claims and third party claims." *Id*.

Defendant also cites *Silverball Amusement, Inc. v. Utah Home Fire Ins. Co.*, 842 F. Supp. 1151, 1165 (W.D. Ark. 1994), *aff'd* 33 F.3d 1476 (8th Cir. 1994). In *Silverball*, a declaratory judgment action, the district court found that Arkansas Code Annotated § 23-79-209 applied, and directing the insurer to defend the insured in a lawsuit, pay any damages that may be incurred therein based on the negligence allegations in the complaint, and reimburse the insured for reasonable attorney's fees and costs of bringing the action for a declaratory judgment. *Id*. In finding that the twelve percent statutory penalty did not apply, the court quoted *Shelter Mutual Insurance Company v. Smith,* 300 Ark. 348, 779 S.W.2d 149 (1989), which states that Arkansas Code Annotated § 23-79-209 "specifically applies to declaratory judgment actions, and excludes the allowance of a penalty although providing for an award of attorney's fees." *Id.*

In *Smith*, the Arkansas Supreme Court determined that Arkansas Code Annotated § 23-79-209, as opposed to Arkansas Code Annotated § 23-79-208, applied to that declaratory judgment

5

action, noting that "[w]e have interpreted [Ark. Code Ann. § 23-79-208] to require the insured to have suffered a loss, and to have recovered a money judgment." 300 Ark. at 351, 779 S.W.2d at 151. The Court, in discussing *Home Insurance Company v. Crawford,* 251 Ark. 843, 475 S.W.2d 889 (1972), stated, "[a]lthough the form of the suit in *Home Insurance* was that of a declaratory judgment, because a money loss did occur and [the insured] satisfied the requirements of Ark. Code Ann. § 23-79-208 (1987), she was allowed to recover both attorney's fees and a penalty." *Id*. at 353, 779 S.W.2d at 152. However, in *Smith*, "no loss was suffered by the [insureds] and no money judgment was recovered, and thus the [insureds] failed to satisfy the requirements of Ark. Code Ann. § 23-79-208 (1987)." *Id*. Therefore, it is clear that there is no bright-line rule that bars recovery of the twelve percent statutory penalty in all declaratory judgment actions.

The district court in *Woods Masonry, Inc. v. Monumental General Cas. Ins. Co.,* 198 F. Supp. 2d 1016, 1036 n.11 (N.D. Iowa 2002), discussed the award of a twelve percent statutory penalty in declaratory judgment actions, and found that "so long as the court finds that a monetary loss occurred, that payment is due, and that the insurer failed to make payment within the time specified in the policy after demand was made, penalties are properly assessed under section 23-79-208." The court noted that in *Silverball,* "the Arkansas district court's holding that section 23-79-209 applies to all declaratory judgment actions and precludes the imposition of penalties under section 23-79-208 is more limited in scope than may be immediately apparent from the broad language of the opinion," stating that "[t]he order did not require the payment of any insurance proceeds because the tort action against the insured had not yet resulted in a judgment against the insured." *Id*. However, the court found that in the case before it, the court's order required the insurer to provide coverage of a claim by an employee of the insured, and "therefore, involves

6

more than a pure declaratory judgment action, which 'orders nothing be done.'" *Id*. (citing *Newcourt Fin., Inc. v. Canal Ins. Co.,* 341 Ark. 181, 15 S.W.3d 328, 332 n. 2 (2000) (citing Ark.Code Ann. §§ 16-111-101 *et seq.*)). The Court discussed the commentary to Arkansas' Declaratory Judgment Act stating, "The judgment is not based on any wrong already done or any breach committed. It is not required to be executed, as it orders nothing be done. It simply declares rights and duties so that parties may guide themselves in the proper legal road, and, in fact, and in truth, avoid litigation." *Id.* (citing Ark.Code Ann. §§ 16-111-101 *et seq.*).

The court also discussed *Newcourt Financial, Inc. v. Canal Insurance Co.,* 341 Ark. 181, 15 S.W.3d 327, 329 (2000), in which the insurer brought a declaratory judgment action, seeking a judgment that it was not liable to the insured in an automobile insurance claim because the insured committed arson, and the insured brought a counterclaim for the payment of the insurance claim. The Arkansas Supreme Court found that the trial court erred in failing to impose the statutory penalty of twelve percent under section 23-79-208 because "[b]y ordering that Canal [the insurer] pay benefits to Newcourt, the circuit court effectively granted Newcourt's counterclaim under section 23-79-208. . . . [B]ecause the court ordered payment under the policy, it necessarily did so pursuant to the counterclaim for payment for a 'loss' under section 23-79-208 since the declaratory-judgment action would not provide such relief." *Id.* at 332. The district court in *Woods Masonry*, found that the case before it was similar to that in *Newcourt* because "while technically a declaratory judgment action, the effect of the order involves a 'loss' under section 23-79-208 and an order of payment" since "the court's order requires [the insurer] to pay the benefits entitled to [the insured's employee] for his work-related injury." *Woods Masonry,* 198 F. Supp. 2d at 1036 n.11 (noting that in *Home Insurance*, the Arkansas Supreme Court held even

7

though the suit was one for declaratory judgment brought by the insurer, nothing in section 23-79-209 "prevents the allowance of the [12%] penalty upon a counterclaim for a loss.").

Furthermore, in *Woods Masonry,* the court also stated that section 23-79-209 applies to suits brought by the insurer, and only applies to suits brought by the insured when the lawsuit is "a suit by the holder of the policy to require the company to reinstate the policy." *Id.* (citing *Newcourt Fin., Inc.,* 15 S.W.3d at 331) ("From its plain language section 23-79-209 applies to actions where judgment is ultimately rendered against certain insurance companies in suits initiated by the companies. It specifically includes a declaratory-judgment action. It also applies to suits filed by holders of policies seeking to reinstate a canceled policy.").

In this case, the Court stated:

> Trustmark's March 18, 2005, letter constituted a statement of its decision that Dr. Burgess' claim fell within the sickness provision of the policy, and not the injury provision of the policy. Therefore, although both parties admit that Dr. Burgess was due the benefits he received prior to February 2008 regardless of whether he was receiving the benefits under the sickness or injury provision, he was actually receiving the pre-2008 benefits under the sickness provision of the policy." Dr. Burgess rightfully contested this determination by Trustmark upon Trustmark's refusal to recognize the evidence to the contrary available to it. When Dr. Burgess submitted his claim statement, it is clear that he did so under the injury provision of the policy. The form provides separate areas for sickness and accident, and Dr. Burgess filled out the accident portion. While Trustmark did pay certain loss benefits to Dr. Burgess, it failed to pay under the proper loss provision, which would have substantial consequences to Dr. Burgess in the near future.

Additionally, the Consent Judgment entered in this case provides, "For so long as Dr. Burgess cannot perform the substantial and material duties of his regular occupation, and for so long as he submits semi-annually to Trustmark a continuous claim form verifying his disability, Trustmark shall pay Dr. Burgess $14,000 a month for the rest of his life." Here, although the form of the suit

8

is that of a declaratory judgment, the Court clearly found that although Dr. Burgess was receiving payment, Defendant Trustmark had been paying the insured Plaintiff under the wrong provision, which would have the effect of denying Plaintiff a substantial amount of money in the near future. Furthermore, this case was not initiated by the insurer, and is not a suit by the holder of the policy to require the company to reinstate the policy. Therefore, the Court finds that it properly awarded the twelve percent statutory penalty in the amount of $234,920. Defendant's Motion to Amend Order is denied.

Accordingly,

IT IS THEREFORE ORDERED that the Defendant's Motion to Amend Order (Dkt. #21) be, and it is hereby, DENIED.

IT IS FURTHER ORDERED that Defendant's Motion to Stay (Dkt. # ) be, and it is hereby, DENIED as moot.

Dated this 19th day of March, 2007.

/s/Garnett Thomas Eisele
UNITED STATES DISTRICT JUDGE